THIS DISPOSITION IS CITABLE
AS PRECEDENT OF THE TTAB

Mailed: 8/21/03

Paper No. 23
ejs

**UNITED STATES PATENT AND TRADEMARK OFFICE**

————

**Trademark Trial and Appeal Board**

————

In re Societe D'Exploitation de la Marque Le Fouquet's

————

Serial No. 74/135,691

————

Marsha G. Gentner and Leesa N. Weiss of Jacobson Holman
PLLC for Societe D'Exploitation de la Marque Le Fouquet's

Jennifer D. Chicoski, Trademark Examining Attorney, Law
Office 115 (Tomas V. Vlcek, Managing Attorney).

————

Before Seeherman, Hairston and Walters, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

On January 30, 1991 Le Fouquet's, the predecessor-in-
interest, by assignment, to the present applicant, Societe
d'Exploitation de la Marque Le Fouquet's, filed an
application for registration of FOUQUET'S in stylized form
for goods and services in 20 classes. The identification
of goods and services underwent several amendments,

ultimately being restricted to goods and services in 18

classes.  The amended identification is set forth in

footnote one.[1]  The application, which was filed by a French

_____

[1]  It appears that there were some errors in entering the
extensive amendments into the Office's computerized data base.
Accordingly, we set out below the identification of goods and
services, as ultimately amended, and have corrected, as
necessary, the Office's records.  Most of these amendments appear
in the response filed on November 4, 1998, but the list also
reflects the amendments submitted in the response filed December
15, 2000:
Class 3: body soap, perfumes, body oils; hair shampoos and
lotions, towelettes for removing make-up; and cosmetics, namely,
moisturizer for skin, face and body, compacts, rouge, eyeshadow;
face and body creams and lotions, make up removing preparations,
cleansing milk for toilet purposes;
Class 5:  dietary food supplements; foods for medically
restricted diets, namely, cooked dishes, desserts, and fresh,
canned, and vacuum packed prepared foods;
Class 6:  metal key rings and metal business card cases;
Class 8: pocket knives, table knives, paring knives; table forks;
spoons; non-electric razors and blades therefor; side arms not
including fire arms, namely, hunting knives; can openers;
cleavers; and vegetable peelers;
Class 14: jewelry; dress accessories, namely, brooches and
ornamental pins; tie pins; hat ornaments; cigarette holders,
cases and lighters of precious metal; and watches;
Class 16: stationery; notecards; playing cards; posters; printing
blocks; paper bags; plastic sandwich bags; plastic bags for food
storage; plastic bags for wrapping gifts; wrapper paper; facial
tissues;
Class 18: leather shopping bags, leather garment bags and leather
tote bags; purses; trunks and traveling bags; umbrellas;
parasols; and walking sticks;
Class 20: furniture; mirrors; picture frames; and venetian blinds
and window blinds;
Class 21: household utensils, namely, pot and pan scrapers,
rolling pins, spatulas, turners, and whisks; hair combs and
brushes; bath sponges, cleaning sponges, and scouring sponges;
glass, porcelain and earthenware mugs; drinking glasses, shot
glasses, pilsner glasses, wine glasses and cocktail glasses;
bowls; pottery, namely, pots, bowls, platters, dishes, plates and
flower vases of earthenware, porcelain and china;
Class 24: textile coasters; traveling blankets; textile linings;
textile table mats; fabric trellis; bed linens, duvets, sheets
and spreads; blankets; quilts, pillow cases; wash cloths; fabric
for making clothing and for furniture upholstery; bath towels and

linens; face cloths; cloth table cloths and runners; cloth
furniture slip covers; curtains; dish towels and cloths;
silkscreens for placing patterns on fabric, clothing and
textiles;
Class 25: clothing, namely, belts, shirts, blouses, jackets,
coats, slacks, pants, shorts, suits, bathing suits, T-shirts,
skirts; dresses; jumpers; ties, scarves, ascots; stockings;
footwear; hats, caps, and headbands;
Class 26: lace trimming; bobbin lace; buttons for clothing;
plastic material for furnishing dresses, namely, buttons,
artificial flowers, and zippers;
Class 29: meat; poultry and game; meat extracts; eggs; fish for
food purposes; fresh, preserved, frozen, and vacuum-packed cooked
meals consisting primarily of meat, fish, poultry, fruits or
vegetables, pork, and foie gras; milk products, namely, yogurt,
cream, milk, butter, cheese, all sold only for consumption in or
take out from restaurants, cafes, bars, brasseries, tea rooms,
hotels and casinos, including gift shops of restaurants, hotels
and casinos; establishments providing home catering services for
private parties and companies, ice cream parlors, and cooking
schools (excluding chocolate, confectionery and pastry schools),
which Groupe Lucien Barriere owns, manages, controls or to which
the applicant has granted or will have granted a trademark
license;  [NOTE: The amendment submitted on December 15, 2000
requests deletion of, inter alia, "preserves, cooked fruits and
vegetable [sic] served alone or associated with other foods."
However, these items were not in the identification as amended by
the response filed on November 4, 1998.]
Class 31: unprocessed almonds; unprocessed peanuts; live trees;
trunks of trees; Christmas trees; bushes; unprocessed cocoa
beans; chicory roots; unprocessed lemons; coconut shell; raw
coconuts; unprocessed cola nuts; fresh beans; natural flowers;
fresh vegetables; fresh lentils; unprocessed maize; malt; malt
extract; marc; fresh chestnuts; raw hazel nuts; unprocessed nuts;
fish spawn; bulbs; raw onions; fresh olives; fresh oranges;
unprocessed beans; raw peppers; live plants; plants dried for
decoration; seedlings; rose bushes; unprocessed grains; fresh
truffles; vine plants; live poultry; aromatic plants for cooking,
namely, dried chili peppers, bay leaves, cumin, cinnamon,
paprika, and blends of aromatic plants for salads or grilled
meat, all sold only for consumption in or take out from
restaurants, cafes, bars, brasseries, tea rooms, hotels and
casinos, including gift shops of restaurants, hotels and casinos;
establishments providing home catering services for private
parties and companies, ice cream parlors, and cooking schools
(excluding chocolate, confectionery and pastry schools), which
Groupe Lucien Barriere owns, manages, controls or to which the
applicant has granted or will have granted a trademark license;
Class 32: carbonated and non-carbonated soft drinks; seltzer
water; syrups for making fruit drinks, juice drinks, soft drinks,

corporation, claimed a right of priority, pursuant to

Section 44(d) of the Trademark Act, 15 U.S.C. §1126(d),

based on a French application which was filed on August 3,

1990.  A certified copy of the French registration was

submitted on February 25, 1991, thereby perfecting

applicant's basis for registration under Section 44(e) of

the Trademark Act.  This French registration, No.

---

and non-carbonated non-alcoholic beverages; non-alcoholic fruit and vegetable juices and cocktails, and beer and non-alcoholic malt beverages, all sold only for consumption in or take out from restaurants, cafes, bars, brasseries, tea rooms, hotels and casinos, including gift shops of restaurants, hotels and casinos; establishments providing home catering services for private parties and companies, ice cream parlors, and cooking schools (excluding chocolate, confectionery and pastry schools), which Groupe Lucien Barriere owns, manages, controls or to which the applicant has granted or will have granted a trademark license;
Class 34: tobacco; smoking pipes; cigars; cigarettes; tobacco pouches and tobacco tins; smoking pipe cleaners and stems for smoking pipes; cigarette holders, cases and lighters not of precious metal; cigar scissors; and matches;
Class 41: educational services, namely, conducting classes and seminars in the field of gastronomy, culinary arts, hotel and restaurant management; book and magazine publication services; radio, television, and motion picture production services; entertainment services, namely, production of award ceremonies in the fields of literature, cinema, applied arts, fine arts, architecture, and gastronomy; entertainment and educational services, namely, ceremonies and exhibitions in connection with the recognition of distinguished achievement in the fields of literature, cinema, applied arts, fine arts, architecture and gastronomy; and
Class 42: ice cream parlor services; preparation of preserved, vacuum-packed or deep-frozen meals for catering establishments or private parties; preparation of pork and butcher's meat for catering establishments and private parties; bar services; hotel, restaurant, café and tearoom services; take out restaurant services.

1,607,819, issued on November 29, 1990, and stated that its duration was ten years, with the right of renewal.

Not surprisingly, in view of all of the goods and services for which application was made, the Examining Attorney found several potential bars to registration under Section 2(d) of the Act on the ground of likelihood of confusion.  In the first Office action, the Examining Attorney advised applicant of four prior pending applications which, if they matured into registrations, might be cited against applicant's application.  On March 30, 1992, action on the application was suspended pending the disposition of these four applications, as well as a cancellation proceeding against a registration for FOUQUET'S for which applicant claimed ownership in the subject application.  On May 6, 1998, another Office action issued in which the Examining Attorney continued the suspension pending a disposition of the four prior pending applications and the cancellation proceeding, but also addressed, inter alia, remaining issues with respect to the identification of goods and services.  Further amendments to the identification were filed by applicant on November 4, 1998 and December 15, 2000.

On February 2, 2001 applicant filed a request that examination of the application be resumed, and explained

that the prior pending applications which had been "cited" against applicant's application were the subject of, or related to, two inter partes proceedings to which applicant was a party. During the course of those proceedings, the parties determined that confusion could be avoided, and entered into formal settlements. Applicant submitted copies of the agreements.

On July 9, 2001 the Examining Attorney agreed that the previously-noted applications no longer posed a bar to registration. However, the Examining Attorney pointed out that the foreign registration upon which applicant's application was based was to have expired on August 3, 2000, and required evidence that the registration would be in force at the time the U.S. registration issued. Applicant disputed the need for such a showing, whereupon the Examining Attorney made the requirement final. It is this issue upon which the subject appeal has been brought.

The appeal has been fully briefed, but an oral hearing was not requested.

A foreign applicant filing a U.S. application under Section 44 may claim a right of priority under Section 44(d) if its U.S. application is filed within six months of the filing date of its foreign application. Such applicant must also, before a U.S. registration may issue, make use

in commerce or must submit proof of ownership of a foreign registration in the applicant's country of origin.

It is the applicant's position that it need not submit evidence that the foreign registration upon which its U.S. application is based continues to be in existence, because it submitted proof of ownership of an existing registration when it provided a certified copy of its French registration on February 25, 1991. Applicant points to Section 44(c), which provides that "No registration of a mark in the United States by a person described in subsection (b) of this section shall be granted until such mark has been registered in the country of origin of the applicant, unless the applicant alleges use in commerce."[2] Applicant asserts that it complied with this requirement when it submitted the certified copy of the French registration in 1991, and that, having satisfied the requirement, it need not submit evidence that the registration remains in existence.

Applicant also relies on In re Deluxe, N.V., 990 F.2d 607, 26 USPQ2d 1475 (Fed. Cir. 1993). That case involved a situation in which a foreign entity, Balmain,

---

[2] We point out that applicant has not sought registration pursuant to Section 1(a) of the Act, relying on use in commerce, nor has it sought registration pursuant to Section 1(b), intent to use. Rather, throughout this proceeding, applicant has relied only on Section 44 as the basis for its application/registration.

International, filed a U.S. application based on its pending foreign application, and then submitted a certified copy of its foreign registration. Subsequently, the U.S. application was assigned to a different foreign entity, De Luxe, N.V., and the Examining Attorney required De Luxe to show that the foreign registration had also been assigned to it. The Court held that this was unnecessary. Specifically, the Court found that Balmain was the owner of the foreign registration at the time the U.S. application was filed, and therefore satisfied the requirements of Section 44 at that time. The Court found no real distinction between the assignment of the U.S. application to De Luxe prior to the issuance of the U.S. registration, and an assignment which would occur after the registration were to issue.

> We do not believe that this situation [assigning the U.S. application to De Luxe after the statutory requirements had been met, but prior to the date of publication] is significantly different from the one in which a foreign applicant merely waits until the U.S. registration issues, and then assigns the U.S. registration. In both instances, the statutory requirements under Section 44 have been satisfied, and only then, is the application or registration assigned; the distinction being merely a delay in the timing of the assignment. We fail to see the rationale of allowing the assignee in one instance to obtain U.S.

8

> registration of the mark, while
> prohibiting it in the other based on an
> arbitrarily chosen cut off point.

26 USPQ2d at 1477.

Applicant argues that the same rationale should apply here. Essentially, applicant contends that because it previously complied with the requirements of the statute by, inter alia, submitting a valid foreign registration, it should not now be required to show that this foreign registration continues to be in existence.

The De Luxe decision, of course, involved the question of whether a foreign applicant could assign its U.S. application without also assigning its underlying foreign registration. It did not consider the question which is before us here, namely, whether the applicant must show that the underlying foreign registration continues to be valid in order for the U.S. registration to issue. That question was, however, considered by the Board in Marie Claire Album S.A. v. Kruger GmbH & Co. KG, 29 USPQ2d 1792 (TTAB 1993), a decision which issued after the Federal Circuit's decision in De Luxe. The Board found that the De Luxe decision did not overrule precedent stating that a valid foreign registration must exist for a U.S. application under Section 44 to register, and reaffirmed the principle, set forth in Fioravanti v. Fioravanti

Corrado S.R.L., 230 USPQ 36 (TTAB 1986), recon. denied, 1

USPQ2d 1308 (TTAB 1986), that the U.S. application is

dependent upon the validity of the foreign registration up

until the time the U.S. registration based thereon is

issued.  The Board stated:

> The Board does not believe that the
> holding of In re De Luxe is applicable
> to the current case.  ...[In De Luxe,
> the Court] stated that "a foreign
> applicant must comply with the
> requirements [of Section 44] at the
> time the application is filed...."  De
> Luxe, 26 USPQ2d at 1477.  However, the
> Court's further explanation reveals the
> limits of this holding.  Central to
> this decision is the fact that a valid
> foreign registration, upon which the
> U.S. application was based, always was
> in existence.  The original applicant
> merely put a new applicant in its
> place, and the Court saw no difference
> between this and an assignment made
> subsequent to the issuance of the U.S.
> registration.  This holding is clearly
> limited to the proposition that "a
> foreign applicant for U.S. registration
> who satisfies the requirements of
> Section 44 may assign the application
> without assigning foreign rights, and
> without precluding the assignee's
> ability to thereafter obtain a U.S.
> registration."  De Luxe, 26 USPQ2d at
> 1477.  Here, we are contemplating the
> possibility that no "duly registered"
> foreign mark exists, as was the case in
> Fioravanti.  Therefore, it is
> appropriate for the Board to suspend
> proceedings pending a determination of
> whether the foreign registration is
> valid.  To hold otherwise would be
> inconsistent with the intent of the

> statute and the need to protect against
> unfair competition....

Marie Claire Album S.A. v. Kruger GmbH & Co. KG, 29 USPQ2d
at 1794.

Applicant argues that the Board erred in the <u>Marie
Claire</u> decision which, applicant points out, was an
interlocutory decision regarding the suspension of an inter
partes proceeding, and thus could not have been reviewed by
the Federal Circuit.  Applicant also argues "the fact that
the applicant in the *De Luxe* case could not submit a
foreign registration for the mark at the time of
publication because it no longer owned such a registration,
as distinct from the expiration of the registration, is a
distinction of no substance."  Brief, p. 6-7.  Applicant
asserts that the Federal Circuit's holding turned on the
issue of timing, not the nature of the defect inhibiting
the applicant from presenting a foreign registration.

We are not persuaded by applicant's arguments.  We see
a clear distinction between a requirement that a foreign
applicant continue to own the underlying foreign
registration which provides the basis for its Section 44
application, and a requirement that the foreign
registration continue to be valid at the time the U.S.
registration issues.  It must be remembered that as the

result of treaty provisions and Section 44, foreign applicants are given substantial advantages over U.S. citizens, most particularly, the right to obtain U.S. registrations for goods and services for which they have not yet used the marks in commerce.  The present application is a good example of this, with applicant attempting to obtain registration for a myriad of disparate goods and services in what was originally 20 classes and which is now 18 classes.  As a result, the provisions of Section 44 should be construed narrowly.  See United Rum Merchants Ltd. v. Distillers Corp. (S.A.) Ltd., 9 USPQ2d 1481, 1483 (TTAB 1988), discussing the standard by which the mark shown in the U.S. application must conform to the mark in the foreign registration:

> ...we must recognize, at the outset, that the purpose of Section 44(e) is to give effect to this country's treaty obligations and to allow foreign applicants to obtain U.S. registrations based on registrations obtained in their countries of origin.  This procedure is an exception to the normal registration process whereby a party is required to use the mark in commerce prior to the application filing date. Because the registration procedure under Section 44(e) is such an exception, we believe it would not be appropriate to construe it broadly....

Section 44(e) of the Act provides, in part, that "a mark duly registered in the country of origin of the foreign applicant may be registered on the principal register if eligible, otherwise on the supplemental register herein provided." The statute does not state that the foreign registration need only have been in existence when the U.S. application is filed, or at some point during examination. Further, subsection (f) provides that "the registration of a mark under the provisions of subsections (c), (d), and (e) ... shall be independent of the registration in the country of origin and the duration, validity, or transfer in the United States of such registration shall be governed by the provisions of this Act." The fact that the statute specifically refers to the U.S. registration being independent of the foreign registration once the U.S. registration issues, indicates that until the U.S. registration issues, the foreign registration must be in effect, as provided by subsection (e).

Although neither applicant nor the Examining Attorney mentioned this in their briefs, perhaps the strongest reason for affirming the requirement of the Examining Attorney that applicant show the continuing validity of its foreign registration is Trademark Rule 2.34(a)(3)(iii).

This subsection, which discusses the requirements for the registration of a mark under Section 44(e) of the Act, provides:

> If the record indicates that the foreign registration will expire before the United States registration will issue, the applicant must submit a true copy, a photocopy, a certification, or a certified copy from the country of origin to establish that the foreign registration has been renewed and will be in force at the time the United States registration will issue. If the foreign registration is not in the English language, the applicant must submit a translation.

Thus, it is clear by the provisions of this rule that applicant must show that its foreign registration is in force currently, and that merely providing a certified copy of a registration in 1991 which showed, on its face, that it would expire in 2000 is insufficient. This section of the rule became effective on October 30, 1999, as part of the rule changes made as a result of the Trademark Law Treaty Implementation Act, and was thus obviously not in effect at the time the Court of Appeals for the Federal Circuit rendered its 1993 decision in De Luxe.

Accordingly, we affirm the Examining Attorney's requirement that applicant submit evidence of the continuing validity of its underlying foreign registration, and affirm the refusal of registration.

14

It is noted that the last sentence of applicant's appeal brief states that, "in the event the Board affirms the Examining Attorney's requirement, it is respectfully requested that jurisdiction of the application be restored to the Examining Attorney for the purpose of permitting Applicant to amend this application to seek registration on an intent-to-use basis." Trademark Rule 2.142(g) provides that an application which has been considered and decided on appeal will not be reopened except for the entry of a disclaimer or upon order of the Commissioner. See also, In re Hines, 32 USPQ2d 1376 (TTAB 1994) and In re Bercut-Vandervoort & Co., 229 USPQ 763 (TTAB 1986). In view thereof, the Board has no authority to grant applicant's request. Applicant's arguments in its reply brief that the Board has such authority are not correct. Although Trademark Rule 2.35(a) provides that, before publication, the applicant may add or substitute a basis, that section must be read in connection with the other provisions of the rules, including Trademark Rule 2.142(g). Thus, for example, Trademark Rule 2.84(a) provides that an examiner may exercise jurisdiction over an application up to the date the mark is published in the Official Gazette. However, once an appeal is filed, it is the Board which has jurisdiction over the application, and the Examining

15

Attorney may only request that the Board restore jurisdiction; the Examining Attorney does not have such jurisdiction as a matter of right. Applicant also cites Michael S. Sachs Inc v. Cordon Art B.V., 56 USPQ2d 1132 (TTAB 2000), in which, after deciding an opposition proceeding in favor of the applicant, the Board noted that the applicant's underlying foreign registration was to expire; stated that the foreign registration must be in force at the time the U.S. registration issues; acknowledged that the Office had received a certified copy of the confirmation of receipt of applicant's request for renewal; and indicated that the application would be remanded to the Examining Attorney to await proof of the renewal of the registration. The Board's actions in an opposition proceeding in terms of remanding an application are not governed by Trademark Rule 2.142(g), which refers only to appeals, and therefore this decision is not relevant to applicant's untimely request for remand.[3]

---

[3] Applicant also makes reference to an unpublished decision referenced by the Examining Attorney in her brief. Applicant has objected to the Examining Attorney's reference to, and attempted reliance on, this decision. Applicant's objection is well taken. The Board does not consider decisions which are not marked "citable as precedent." See General Mills Inc. v. Health Valley Foods, 24 USPQ2d 1270 (TTAB 1992)(the Board will disregard citation as precedent of any unpublished or digest decision, even if a complete copy is submitted). By the same token, however, the Board will not consider this decision for the purpose applicant refers to later in its brief.

If applicant had wished to preserve its right to substitute Section 1(b) intent-to-use as a basis for its application, it should have either made this an alternative request during the examination phase or, if it could have shown good cause, requested remand of the application to the Examining Attorney during the briefing stage of the appeal.

Decision:  The refusal of registration is affirmed.